*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CF-1218

QUINTON WORKMAN, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-14787-15)

(Hon. Ronna L. Beck, Trial Judge)

(Argued April 13, 2021                                    Decided July 29, 2021)

*William Collins*, Public Defender Service, with whom *Samia Fam* and *Jaclyn S. Frankfurt*, Public Defender Service, were on the briefs, for appellant.

*Ann M. Carroll*, Assistant United States Attorney, with whom *Michael Sherwin*, Acting United States Attorney at the time the brief was filed, and *Elizabeth Trosman* and *John P. Mannarino*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN, THOMPSON, and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*:  Appellant Quinton Workman challenges his

convictions for firearm offenses, arguing that the trial court erroneously permitted

the United States to prosecute him on a second indictment after the first indictment was dismissed without prejudice.  We affirm.

## I.

Except as indicated, the following appears to be undisputed.  Police officers arrested Mr. Workman in October 2015 and charged him with offenses including unlawful possession of a firearm.  The police swabbed both the firearm and Mr. Workman's cheek for DNA.  Mr. Workman was preventively detained in this case pending trial, and he also was detained in a separate case in which he had been on parole at the time of his arrest in this case.

Mr. Workman's trial was initially scheduled for early March 2016, but the originally assigned prosecutor did not submit the DNA evidence for testing until early February 2016.  A newly assigned prosecutor requested a continuance to complete DNA testing, but the trial court denied that request.  The prosecutor asked the lab to expedite the DNA testing.  Two days before the scheduled trial date, the prosecutor received the DNA results and turned them over to the defense.  Mr. Workman filed a motion to exclude the DNA results on the ground that the United States had failed to disclose the DNA results to Mr. Workman in a timely manner.

At a hearing on the scheduled trial date, the prosecutor stated that the United States was ready to proceed, with the caveat that some property would arrive later that day. The trial court granted the motion to exclude the DNA evidence, because Mr. Workman would be unduly prejudiced by having to choose "between remaining detained and securing an expert to look at the government's analysis or going forward to trial without being prepared to meet the expert's testimony."

Following that evidentiary ruling, the trial court asked if the United States remained ready to proceed. The prosecutor indicated that the United States was no longer ready to proceed, "because of the lack of property and because of the DNA evidence not being introduced." At the trial court's invitation, defense counsel moved to dismiss the case for want of prosecution. Defense counsel did not ask that the dismissal be with prejudice, which would have barred further prosecution. *United States v. Stephenson*, 891 A.2d 1076, 1082 (D.C. 2006). To the contrary, defense counsel appeared to acknowledge that Mr. Workman would likely be reindicted, stating, "I do think the government is announcing not ready to circumvent the Court's order precluding the expert testimony." The trial court dismissed the indictment without prejudice, and defense counsel said, "Thank you, Your Honor." After the dismissal, Mr. Workman was released in the present case, but he initially

remained in detention in his other case pending resolution of his parole status. He was later released in the other case.

After the United States reindicted Mr. Workman, Mr. Workman filed a motion to dismiss the second indictment with prejudice, arguing that the United States was harassing him by circumventing the trial court's orders denying a continuance and excluding the DNA evidence. The trial court denied the motion. The trial court explained that, at the time of the original dismissal without prejudice, the United States had the DNA evidence in hand, but the trial court had determined that it would be unduly prejudicial to continue to hold Mr. Workman and require him to choose between a delay in the trial or proceeding to trial without adequate time to respond to the DNA evidence. The trial court further found that the United States had not acted in bad faith. The trial court also noted that the consequence of its initial dismissal had been that Mr. Workman was released in the present case. When defense counsel pointed out that Mr. Workman had initially remained detained in the parole matter, the trial court stated that it had no control over the parole matter.

At trial, the United States introduced evidence that Mr. Workman was stopped for driving a car with stolen tags; that a revolver was in the car's center console; that Mr. Workman could not be excluded as a source of DNA on the revolver; and that

the chance of randomly selecting an unrelated person who could not be so excluded was at most one in twenty-two quintillion.  The parties stipulated that Mr. Workman had a prior conviction for an offense punishable by more than a year of imprisonment, did not have a license to carry a pistol in the District of Columbia, and had no valid firearm registration in the District of Columbia.  The jury found Mr. Workman guilty of two firearm offenses.

## II.

Super. Ct. Crim. R. 48(a)(2) requires leave of the court before the government may dismiss an indictment.  Relying on that provision, Mr. Workman argues that the trial court erred in allowing the United States to prosecute him under the second indictment.  The United States argues, however, that Rule 48(a)(2) does not apply, because that rule applies to government motions to dismiss, and this case involves defense motions to dismiss.  Mr. Workman responds by arguing that the United States failed to preserve this point in the trial court and that, in any event, the United States in effect moved to dismiss on the original trial date, by declaring that it was not ready to proceed with trial.  We need not decide the latter two issues.  Instead, we assume without deciding that this case is governed by Rule 48(a)(2).  We similarly assume that Mr. Workman adequately preserved an objection in the trial

court, although Mr. Workman moved for dismissal of the original indictment without explicitly asking that the dismissal be with prejudice and did not explicitly object at the time to dismissal without prejudice.

Given those assumptions, it appears to be undisputed that we review the trial court's ruling for abuse of discretion. *Cf., e.g.*, *Rinaldi v. United States*, 434 U.S. 22, 32 (1977) (per curiam) (reviewing trial-court ruling under Fed. R. Crim. P. 48(a) for abuse of discretion); *Martin v. Santorini Cap., LLC*, 236 A.3d 386, 393 n.3 (D.C. 2020) (when interpreting local rule, court looks to federal decisions interpreting similar federal rule for guidance); *Ferrell v. United States*, 990 A.2d 1015, 1020 n.4 (D.C. 2010) (relying on federal cases interpreting Fed. R. Crim. P. 48(a), because "federal Rule 48(a) functions in a manner similar to our local rule"). We see no abuse of discretion in this case.

As previously noted, Rule 48(a)(2) permits the government to dismiss an indictment with leave of the court. "Such a dismissal is without prejudice unless otherwise stated." Super. Ct. Crim. R. 48(a)(2). Ordinarily, the government can reindict the defendant after a dismissal without prejudice. *E.g.*, *United States v. Hector*, 298 A.2d 504, 504-05 (D.C. 1972). The trial court has the responsibility, however, to prevent dismissals without prejudice and subsequent reindictments that

constitute "harassment" of a defendant. *United States v. Kennedy*, 220 A.2d 322, 323 (D.C. 1966); *see also, e.g.*, 3B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 801 (4th ed. 2021) (under Fed. R. Crim. P. 48(a), trial court should deny motion to dismiss without prejudice if motion is made for "improper purpose, such as harassment of the defendant").

## A.

Mr. Workman argues for a flat rule that the government engages in impermissible harassment any time it dismisses an indictment in the hope of later reindicting the defendant under more favorable circumstances. There is support for that view. *See, e.g.*, *United States v. Pitts*, 331 F.R.D. 199, 204 (D.D.C. 2019) ("[T]he government is not free to indict, dismiss, and reindict solely to achieve a more favorable prosecutorial posture."); *cf. Kennedy*, 220 A.2d at 323 (stating generally that "[t]he purpose of Rule 48(a) was to prevent the harassment of a defendant caused by charging, dismissing and recharging him without placing him in jeopardy"). For several reasons, however, we conclude that the flat rule advocated by Mr. Workman would be both unwarranted and contrary to the weight of authority.

First, as a textual matter, Rule 48(a)(2) provides that dismissals on a government motion will be without prejudice unless the trial court states otherwise. Super. Ct. Crim. R. 48(a)(2) ("Such a dismissal is without prejudice unless otherwise stated."). That default seems incompatible with Mr. Workman's position that the government is flatly barred from dismissing a case without prejudice in the hope of possibly resuming prosecution later under more favorable circumstances.

Second, it therefore should not be surprising that decisions of this court and many other courts have frequently used much narrower language when describing the kinds of government dismissals that should be prohibited under Rule 48(a). *See, e.g.*, *Ferrell*, 990 A.2d at 1015 n.4 (citing with approval case explaining that "the principal purpose of the leave of court requirement of Fed. R. Crim. P. 48(a) is to protect a defendant from the government's harassing him by *repeatedly* filing charges and then dismissing them before they are adjudicated") (emphasis added and internal quotation marks omitted); *District of Columbia v. Weams*, 208 A.2d 617, 618 (D.C. 1965) (prosecutor may not dismiss information "in a manner that is scandalous, corrupt, or capricious and vexatiously repetitious") (internal quotation marks omitted); *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016) ("A court thus reviews the prosecution's motion under Rule 48(a) primarily to guard against the prospect that dismissal is part of a scheme of prosecutorial

harassment of the defendant through repeated efforts to bring—and then dismiss—charges.") (internal quotation marks omitted); *United States v. Jones*, 664 F.3d 966, 973 (5th Cir. 2011) (dismissal permitted unless prosecutor is motivated by considerations "clearly contrary to manifest public interest"; trial court must start with presumption of good faith) (internal quotation marks omitted); *United States v. Palomares*, 119 F.3d 556, 558 (7th Cir. 1997) ("key factors" in evaluating Rule 48(a) motion to dismiss are "government's reasons and good faith").

Third, focusing on outcomes rather than language, a number of appellate decisions have upheld trial-court orders refusing to dismiss reindictments with prejudice in circumstances that would be foreclosed under the flat rule that Mr. Workman advocates. *See, e.g.*, *Jones*, 664 F.3d at 973 (trial court did not abuse its discretion by refusing to dismiss reindictment where United States dismissed original indictment without prejudice in order to add other defendants and charges, and to move prosecution to different division nearer to location of charged offenses); *United States v. Hayden*, 860 F.2d 1483, 1488 (9th Cir. 1988) (trial court did not abuse discretion in refusing to dismiss reindictment with prejudice where United States dismissed original indictment without prejudice in order to investigate additional information provided by cooperating witness and potentially bring additional charges against defendant); *United States v. Feldhacker*, 849 F.2d 293,

295 (8th Cir. 1988) (trial court did not abuse discretion in refusing to dismiss reindictment with prejudice where United States dismissed original indictment without prejudice after trial court suppressed evidence, weakening United States's case); *United States v. Strayer*, 846 F.2d 1262, 1264-66 (10th Cir. 1988) (trial court did not abuse discretion in refusing to dismiss reindictment with prejudice where United States dismissed original indictment without prejudice in order to fix defects in indictment); *cf. United States v. Goodson*, 204 F.3d 508, 512-16 (4th Cir. 2000) (where United States was unprepared for trial due to absence of essential witness, trial court abused discretion by denying United States's motion to dismiss under Rule 48(a) and instead granting defendant's motion to dismiss with prejudice; trial court was required to grant United States's motion in absence of bad faith, which was not present).

In sum, we hold that the second indictment in this case was not precluded simply because, at the time of the dismissal of the original indictment without prejudice, the United States hoped to prosecute Mr. Workman later under more favorable circumstances.

Turning to the particular circumstances of this case, we conclude that the trial court exercised its discretion permissibly. We first consider the trial court's initial

decision to grant a dismissal without prejudice. The United States had provided Mr. Workman with critical DNA evidence just before trial. Appropriately, the trial court was unwilling to require Mr. Workman to start trial without having an adequate opportunity to respond to that DNA evidence. The trial court also understandably was reluctant to grant the United States's motion for a continuance, given that Mr. Workman had already been preventatively detained for more than the one hundred days ordinarily permitted. D.C. Code § 23-1322(h)(1) (2012 Repl.). In our view, the trial court could permissibly have addressed the situation by granting a continuance and ordering that Mr. Workman be released in this case pending the continued trial date. *See, e.g.*, Super. Ct. Crim. R. 16(d)(2)(B) (remedies for discovery violation include granting of continuance); *Ashby v. United States*, 199 A.3d 634, 646-47 (D.C. 2019) (trial-court decision regarding discovery sanctions reviewed for abuse of discretion; "[T]he range of available sanctions is extremely broad, with the only real limitation being that a sanction must be just under the circumstances.") (brackets and internal quotation marks omitted); *Moctar v. United States*, 718 A.2d 1063, 1065 (D.C. 1998) ("[T]he grant or denial of a continuance rests within the sound discretion of the trial judge."). Instead, the trial court went one step further to protect Mr. Workman's interests, by dismissing the original indictment without prejudice. The parties and the trial court appear to have understood that dismissal without prejudice would permit the United States to

reindict and to use the DNA evidence in Mr. Workman's prosecution, after Mr. Workman had an adequate chance to prepare to respond to that evidence. By dismissing the indictment, rather than simply releasing Mr. Workman in this case pending trial, however, the trial court placed on the United States the additional burden of obtaining a new indictment. The trial court also made it possible for Mr. Workman to be released from custody if Mr. Workman could resolve his parole matter. Finally, we note the absence of a clear contemporaneous objection from Mr. Workman to the trial court's decision to dismiss the original indictment without prejudice. *See, e.g.*, *Inmates of Suffolk Cnty. Jail v. Eisenstadt*, 518 F.2d 1241, 1243 (1st Cir. 1975) (in determining whether trial court abused discretion, court of appeals considers absence of specific objection). In sum, we see no abuse of discretion in the trial court's initial ruling.

Our conclusion that the trial court did not abuse its discretion by dismissing the original indictment without prejudice is very important to our further conclusion that the trial court did not abuse its discretion by declining to dismiss the new indictment with prejudice. Nothing of significance had changed since the trial court's initial ruling. Rather, the United States had simply done what the trial court and the parties understood, at the time of the initial dismissal without prejudice, that the United States could do. In the absence of changed circumstances, the trial court

was not required to retroactively convert the initial dismissal without prejudice into a dismissal with prejudice.

We are not persuaded by Mr. Workman's remaining arguments to the contrary.

First, Mr. Workman argues that the new indictment was an attempt to circumvent the trial court's rulings excluding the DNA evidence and denying a continuance. We disagree. The trial court's ruling excluding the DNA evidence was explicitly tied to the particular circumstances at the time of the ruling. In addition, the trial court did not deny a continuance because it had decided that it was critical that the matter be tried immediately, without the DNA evidence. Rather, the trial court thought it would be unfair to make Mr. Workman choose between going to trial when he was not ready to meet critical evidence and remaining detained in this case during a continuance. The trial court thus picked a different path: dismissing the indictment without prejudice, which obviously permitted the United States to introduce the DNA evidence at a later trial if the United States reindicted Mr. Workman. In sum, the trial court reasonably did not view the United States's conduct as an end run around the trial court's earlier rulings.

Second, Mr. Workman argues that the trial court impermissibly considered the prosecutor's subjective good faith. We conclude otherwise. Numerous courts have held that the presence or absence of good faith is important in determining whether dismissal without prejudice and prosecution on a new indictment are permissible. *See, e.g.*, *Palomares*, 119 F.3d at 558 ("key factors" in evaluating Rule 48(a) motion to dismiss are "government's reasons and good faith"); *United States v. Salinas*, 693 F.2d 348, 352 (5th Cir. 1982) (presuming good faith and discussing prosecutor's motivation).

Mr. Workman argues, however, that the Supreme Court's decision in *Rinaldi*, 434 U.S. at 30, indicates that it is irrelevant whether the government's dismissal is in good faith or bad faith. To the contrary, the Supreme Court in *Rinaldi* explicitly considered whether the United States was acting in good faith or bad faith when it sought to dismiss the indictment. *Id.* ("[T]he record has not disclosed (and we will not presume) bad faith on the part of the Government at the time it sought leave to dismiss the indictment . . . ."). The comment upon which Mr. Workman relies was making a different point: that the relevant issue was not whether the original decision to prosecute was made in bad faith. *Id.* ("The salient issue, however, is not whether the decision to maintain the federal prosecution was made in bad faith but

rather whether the Government's later efforts to terminate the prosecution were similarly tainted with impropriety.").

Third, Mr. Workman challenges the trial court's reliance on the fact that the United States had the DNA results "in-hand" on the day of trial. We agree with the trial court, however, that it was relevant that this was not a case in which the United States sought to dismiss charges without prejudice in order to wait "for an indefinite period of time in the hope or expectation that something will turn up." *United States v. Poindexter*, 719 F. Supp. 6, 11 (D.D.C. 1989) (footnote omitted).

Fourth, Mr. Workman relies on a number of cases that he argues support reversal. Some of those cases, however, place emphasis on whether the reindictment at issue was an impermissible end run around a trial-court ruling. *E.g.*, *Hayden*, 860 F.2d at 1489 (dismissal with prejudice of new indictment could have been appropriate if "the district judge concluded and specifically found that the government utilized the Rule 48(a) motion as a pretext to bypass [the district judge's] denial of the continuance"). As we have explained, the trial court in this case reasonably did not view the reindictment as an end run around its earlier rulings.

Other cases that Mr. Workman cites involve circumstances quite different from those of the present case. *E.g.*, *Salinas*, 693 F.2d at 349-53 (prosecutor dismissed first indictment after jury selection, without stating reason other than that superseding indictment would be filed; government reindicted six days later on virtually identical charges; prosecutor acknowledged that dismissal was based on desire to go to trial with different jury). In other of the cases, the trial court chose to exercise its discretion to dismiss a new indictment with prejudice, and the question on review was whether that ruling was an abuse of discretion. *E.g.*, *United States v. Derr*, 726 F.2d 617, 618-19 (10th Cir. 1984). Appellate decisions upholding a given exercise of discretion do not necessarily establish that a different exercise of discretion would be impermissible. *See Strayer*, 846 F.2d at 1266 ("*Derr* did not *mandate* dismissal of subsequent indictments; we merely determined that the trial court did not abuse its discretion in granting the motion to dismiss."); *see generally, e.g.*, *Muniz v. United Parcel Serv.*, 738 F.3d 214, 223-24 (9th Cir. 2013) ("An appellate decision upholding a particular exercise of trial court discretion does not mean that the appellate court would not have also upheld a substantially different decision."); *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 918 (7th Cir. 1994) ("When an issue is governed by a deferential standard of review, such as abuse of discretion, . . . two district judges who reached the opposite result in identical cases might both be affirmed.").

In sum, although the authority from courts around the country is not uniform, in our view the weight of authority supports affirmance in the particular circumstances of this case.

Fifth, Mr. Workman argues that the trial court erred by relying on a mistaken belief that Mr. Workman was released from custody as a result of the initial dismissal without prejudice. The trial court accurately acknowledged, however, that the initial dismissal without prejudice caused Mr. Workman to be released from custody in this case but (at least initially) not in the parole matter.

Finally, Mr. Workman argues that the trial court erred in stating that "on this record it would be an abuse of my discretion to dismiss the case with prejudice here." We need not decide whether that statement by the trial court was correct. The trial court considered the relevant factors and concluded that those factors did not justify dismissal with prejudice. Even if it would have been permissible for the trial court to have ruled differently, it is clear that the trial court was not inclined to exercise its discretion in that manner. We see no basis for remanding to the trial court in such circumstances. *Cf., e.g.*, *Black v. District of Columbia Dep't of Human Servs.*, 188 A.3d 840, 851 (D.C. 2018) (although remand is ordinarily necessary when agency

has not adequately explained its reasoning, "remand is unnecessary if the agency would doubtless reach the same result") (internal quotation marks omitted).

For the foregoing reasons, the judgment of the Superior Court is

*Affirmed.*